Thank you, your honors. I represent Brandt Tarzana, which is a surgery center. And in this case, we are the appellate party. This case was very exhaustively briefed. And in December of 2000, last year, December of 2020, another panel of this court came out with a recent published decision entitled Beverly Oaks Surgery Center v. Blue Cross Blue Shield of Illinois that addresses in detail many of the same issues that are subject to this appeal. We, on behalf of the appellant in this case, are perfectly happy to go ahead and have this panel consider and decide upon the four issues that we put forth as the groundings for the court to reverse the trial court, the district court's dismissal of the action. We think all of our four groundings in the briefing are proper and would each independently support reversal. But in a series of meet and confer communications between myself and Mr. Kleiner, we suggested to the court by way of stipulation that the court might simply reverse the judgment and remand and send it back to the trial court based on the new law that has been set forth in this recent published opinion in the Beverly Oaks case. Mr. Williams, let me ask you some questions about the stipulation. And I anticipate we'll get to the merits here. But the stipulated motion was to vacate and reverse the judgment that was entered by Judge Fisher in the lower court proceedings. And Beverly Oaks seems to have relevance to this appeal primarily as it relates to the issue of waiver and maybe to some degree the issue of estoppel. But there's nothing that I can see in Beverly Oaks that answers the central question as to whether the California Insurance Code automatically renders the plan's anti-assignment clause void. But it appears to me that you want to go back to scratch, start over, perhaps engage in some discovery. Although it would seem to me that anti-assignment issue is really a legal issue. And I'm confused as to what you are trying to accomplish through the stipulation in a practical sense. And here I've got to concede, Mr. Williams, that I'm sort of putting my trial judge hat on here. And I'm feeling a little pain for Judge Fisher, who did a lot of work in this case. Not only in this case, but in the companion case. I'm just trying to figure out practically  with this stipulation. Thank you, Your Honor. And we think this stipulation fundamentally was to offer a shorthand approach by which this court would be able to resolve this appeal and send it back to Judge Fisher, where she would simply pick it up where we left off. Where we left off was with a final judgment, where she resolved all of the issues. And it would seem to me, if I'm Judge Fisher, if this case comes back to her, there's no reason why she wouldn't simply issue the same ruling as it relates to the anti-assignment issue. And I guess I'm just sort of troubled with that. Was it your intent to revisit all of the issues in the case, stop a waiver in the anti-assignment issues with the stipulation? It was at least my intent on behalf of my client that we would go back to the trial court. The trial court decided the issues on the basis of a motion to dismiss. So there was no evidence before the district court other than the pleading itself. And so we would go back to the district court and present evidence, presumably the issue of waiver or estoppel or the other issues would be subject to evidence based on a summary judgment proceeding or a trial in the trial court. Because in both Beverly Oaks and in the present case, they were decided on the basis of motions to dismiss. Now, it certainly is true that neither of those stipulated, excuse me, counsel, you all stipulated that Judge Fisher could enter judgment in the manner that she did based on her rulings, not only in this case, but in the companion case. What discovery would need to be done as it relates to the assignment issues? On the issue of the anti-assignment, we don't believe that from my plaintiff's standpoint that there will be any discovery because we think that the essentially the facts of the Beverly Oaks case are very consistent with the facts of the present case. My firm was the counsel in both of these cases and the pleadings are very similar and plead similar grounds that we think will support a waiver in this case. The difference is that this case is to be decided under California law, whereas the Beverly Oaks case was decided under federal ERISA law. And those are different bodies of law. And we do not address in the stipulation the issues of California law, but essentially we think that California law is very clear that anti-assignment clauses are disapproved on public policy grounds very strongly, much more so than was previously the case under ERISA. But counsel, you could live with a ruling that says Judge Fischer was right on interpretation of the anti-assignment clause, as long as you can pursue discovery to bolster your waiver and estoppel claim, which would prevent Aetna from invoking the affirmative defense of the assignment violation, right? I think we would live with that ruling, although certainly we would argue that under California law, Judge Fischer was wrong. And I think we argue that extensively in the briefing. And if this court will reach that issue- I assume for purposes of my hypothetical that I think she may have been right on the applicability of the anti-assignment clause to health insurance policies that are a subset of disability policies and therefore not subject to, what is it? Section 520. But notwithstanding that, you could still live with the result if you've got a viable waiver and estoppel claim, which would prevent Aetna from raising it. And allow you to go forward and show that they had a pattern and practice of paying these claims and have no justification besides the anti-assignment clause for refusing to pay the remaining money that's due in owing your client. That is true. We would certainly be in a position where if this panel were to decide that the Section 520 does not void the anti-assignment clause under California law, that a favorable finding by this court on waiver or estoppel sending it back and reversing on that ground would be perfectly acceptable to us. But we certainly think we're right on the merits under Section 520, but waiver and estoppel is a separate issue. And we believe that we can and should prevail in this court on those grounds as well. And so if the court is not disposed to approach it in a shorthand way, as we had suggested, I would address the issue of the California law and whether Judge Fischer was correct or incorrect in deciding that health insurance policies are in fact a subset of disability policies under California law. We think that clearly they are not. And that is very, very exhaustively briefed in both our initial and our reply briefs. I don't wanna go into the agonizing detail of it, but except to point out that the change in the law that occurred in 2002, where Section 106B was added to the insurance code, that change in the law was specifically determined to not be applicable, except with respect to statutes that were newly added after the change in the law. And Section 520 is a statute that was in existence prior to the change in the law. And therefore, we think just on a basic statutory construction ground, the application of the new law of Section 106B to a predecessor statute that dates back to 1947 was an incorrect determination by the court. And that's the fundamental error that we believe exists in the district court's effort to essentially equate health insurance policies with disability policies is that- Mr. Williams, do you have any evidence that California has ever treated health insurance as a discrete form of insurance, including prior to 2001? I have not seen any sort of law on that subject. However, in terms of the practical application of insurance law and both in the disability realm, there are many instances where the term disability policy is defined so that it includes health insurance, medical insurance, those providers, the connection was made. And I believe that Aetna cites some record from the change in the law to that effect. And we think that actually supports my argument that the definition of disability in Section 520 or actually 10.119 that was adopted in Section 520, that enforces the idea that disability as used in Section 520 was not intended to encompass disability policies because it didn't use that clumsy language that the courts were trying to rectify by way of the new statute, which did equate disability with medical hospital type expenditures. The absence of that additional language about meshing them together, we believe makes it clear that Section 520 was not intended to encompass disability policies. And therefore, the application of anti-assignment in that context should be void. But I'm not aware of any law that has specifically said that. The cases that have equated health insurance with disability insurance are all cases that are post-date to the change in the law that occurred in 2002. So we think that those are really off point. They may shed some light about the status of health insurance and disability policies today, but they don't shed any light about the status of health insurance and disability policies back in 1947 when Section 520 was last amended. All right, Mr. Williams, let's shift gears here just for a minute and focus on waiver and estoppel. As I understand the elements that support each of those theories, estoppel includes an element of causation that labor lacks. What's your argument in terms of that causation issue? What did your client do or continue to do that would constitute their support estoppel? Well, it continued to perform services in the context of the specific claim and more broadly in the context of many claims over a period of time. The key of the element of estoppel is a misrepresentation by the insurance company. And here the relevant misrepresentation is the same one that was at issue in the Beverly Oaks case, which was during the verification phone call process pre-services, the insurance company told the surgery center that they were eligible for coverage under the insurance at issue. And these encompass a variety of health insurance plans and the insurance companies simply affirmed their eligibility for the coverage so that they then went forward. And each complaint alleges that the surgery center plaintiff in each case relied upon their affirmation of eligibility for coverage under the applicable health insurance plan and that they therefore performed services under the plan based on the verification that was given by the insurance company pre-performance of services. Then when the insurance company came in after litigation ensued and asserted for the first time the anti-assignment clause, they are stopped to assert it based on the misrepresentation that occurred back in the pre-services day at the verification stage. And similarly with respect to waiver, the fact that the insurance company did not say anything about their anti-assignment clause and their intention to assert it at the same time that the insurance company in each case Beverly Oaks and in this case knew about the fact that the provider was going forward on the basis of assignments, that knowledge was established that they knew about it, but they didn't say anything about it. That is exactly the conduct that is sufficient to state a claim for waiver. And this court had actually reached that very issue earlier in the Spina Dex and Harlech decisions back in 2012 and 2014, but for reasons that I don't believe were appropriate had really slipped away from applicable law as stated in Spina Dex and Harlech. And we believe that what the court in Beverly Oaks did was simply restate the proper framework for this sort of after the fact new position by the insurance company, that it was not simply a litigation defense, but that it was something that needed to be raised pre-surgery in order to protect the surgery center so that if they said, well, you're gonna be relying on assignments, we're not gonna allow you to do that, you need to understand you're not gonna be allowed to do that. In that event, the insurance company would have the opportunity to make a decision whether they wanted to go forward at all with their services and maybe they would, or maybe they wouldn't, but they would at least then be in a position to make an informed decision about what the insurance company was going to be doing and what their rights were. All right, so let me just jump in. Unless you have any other questions from my colleagues, I'll go ahead, Mr. Williams, give you two minutes of rebuttal. You had a lot of questions during your time. We'll go ahead and now hear from Mr. Kleiner. Good morning, Your Honors. Matt Kleiner on behalf of the Aetna Appellees. This is a bit of a different procedural status in me coming to oral argument and having a motion that we stipulated to dismiss and to vacate the judgment and send this back to the district court. And Judge Christensen, I understand your concern about being a trial judge and all the work that Judge Fischer put in and putting together the order. And we're not trying to undo that or discredit that in any way, shape or form. Unfortunately, the playing field upon which we were playing has changed. We're no longer on the same playing field that we were on when Judge Fischer granted our stipulation to grant the motion to dismiss. And it's important. Well, what's changed? Sherman Oaks? Beverly Oaks was issued at the end of December. Oh, Beverly Oaks? Yes, Your Honor. Well, but how does Beverly Oaks get you back to square one as it relates to the assignment clause issue? Well, we had been successful at the district court level convincing the court that the anti-assignment provisions applied and any waiver or stop arguments weren't sufficient. The allegations that the Ninth Circuit has now approved in Beverly Oaks is essentially the same as those allegations that are in our case, that Brandon Tarzana has alleged that in this UB04 form, which is the claim form that you submit when you're submitting a claim, that they checked the box that said assignment of benefits. And also during the verification of benefit calls, they informed Aetna that there was an assignment. So because that's been alleged in the complaint and now Beverly Oaks has come out and said that those allegations are sufficient to allege a cause of action, or at least, I guess, a defense of waiver and estoppel, those claims can now proceed. And we have to go back to the district court to do our factual investigation to determine whether or not, what specifically did Brandon Tarzana tell Aetna during those verification calls? We'll need discovery on the people who made those calls. What is their recollection of what was said during those calls? Does Brandon Tarzana keep verification forms where they've documented that they told Aetna that there was an assignment? What was the nature of the assignment? So these waiver and estoppel arguments are heavily factual. And the Beverly Oaks decision has basically said, yeah, look, if they can prove those allegations that they put in their complaint, then they've established waiver and estoppel. So again, unfortunately, the playing field has changed. We need to go back to the district court to be able to develop that evidence, those facts. And then we would, depending on how those facts develop, we may file a motion for summary judgment saying, based on these facts, there isn't any argument for waiver. There isn't any argument for estoppel. So we have to go back and do that discovery in order to figure that out. Well, it sounds to me like you're conceding we should at least reverse Judge Fisher's decision, which was a stipulated judgment as it relates to waiver and estoppel. And I don't want to waste any more time on this, but I'm still troubled by why you would want to go back and relitigate the issue of the assignment, because that strikes me as being purely a legal issue. It's well-developed in the orders that have been issued in both cases. It seems like we could address that issue and make everybody's life a lot easier if you got an answer in terms of that anti-assignment clause. And Your Honor, it's not something that we wanted to do. We gave it careful consideration as to the Beverly Oaks decision, but we're just trying to abide by a decision that we believe is binding on us here. And so we're trying to follow that precedent. And my understanding is that the Beverly Oaks decision, there's a petition for inhering and bonk pending, and that may even go up further. So the law could change again. And unfortunately, we just don't know what the law will be in three months. But as of right now, we're stuck with Beverly Oaks from our perspective. And I do think that that gives them the ability to assert that we waive the anti-assignment provisions or are stopped from asserting them based on those factual allegations. But again, those are heavily factual allegations there. So Mr. Kleiner, you could live with the remand that essentially affirmed the district court with regard to its ruling that anti-assignment clauses are applicable here, but the court needs to go forward with discovery as to whether Fran Tarzana can establish the elements of waiver and stop. And then you reserve the right to challenge their position by way of summary judgment after discovery is complete. That's exactly right, Your Honor. We are comfortable. We believe that Judge Fischer correctly decided the issue on insurance code section 520 and addressing the alleged ambiguity in the plan. But at the end of the day, because of Beverly Oaks, it should go back, allow the parties to develop the evidence as it relates to waiver and estoppel and then move forward from there. And because the arguments that Fran Tarzana raises in the appeal are for independent grounds, if they're successful on any one of those grounds, it would require reversal. And that's why our stipulated motion focused on Beverly Oaks, which addresses the two of those grounds, waiver and estoppel. And regardless of what the court's interpretation is of insurance code section 520, whether that applies or not, we still have to go to the next step of waiver and estoppel and whether or not the anti-Semitic provisions have been waived or estopped. And again, those are factual issues. Mr. Kleiner, clearly you've been working with opposing counsel in this case. And I always appreciate it when parties are willing to try to work something out. I'll ask kind of the next step question. Have you guys tried any type of mediation or anything in this case? I mean, it seems like you guys are, obviously you guys have disagreements, but you guys also are close on a lot of stuff. I'm just curious if you guys have tried that. Your Honor, we have been to mediation and this is just one of, I think, four cases that Mr. Williams and I are litigating together. And we do have a good working relationship. He's been very professional, very good to work with. And we went through the whole Saman case and addressed these issues. But we did have a mediation in this case. And what held us up was the defenses that we were raising, that Aetna was raising. Because we felt that we needed to address these defenses before we get to the next phase, which is, were the claims denied improperly? And then for those claims that were paid, were they partially paid improperly? Or should they have been paid more on those claims? And so we've addressed those issues. And again, yes, we have, to answer your question, yes, we have mediated and we have a number of cases going on, so we work closely on those cases. But I take it that you don't think further mediation would be helpful at this point. No, no, I disagree. I think that further mediation is helpful. And we had wanted this issue to be resolved and ultimately in the underlying case, our motion to dismiss was granted in its entirety. So that got rid of this case. So now that this is going back and we have direction on our defenses, a further mediation would be helpful and appropriate. And likely we will proceed down that route on this case. Well, I'll just ask, and Judge Talman's been, I don't wanna age him, but he's been doing this longer than me. But we do have a mediation office in the Ninth Circuit and we occasionally do refer cases from, like after arguments, sometimes we do send them to mediation. Is that something that, you know, I've seen, I've been on panels where we have ordered the parties to enter mediation, obviously it doesn't work out, it doesn't work out. But rather than us send it back to the district court initially, we could send it to our mediation office in San Francisco. Is that something that, you know, you'd be interested in us doing in this case? I appreciate the offer and I have used the Ninth Circuit mediation program a number of times and it's very good and I've settled many cases through the program. I don't think that that's the best use of our times. And the reason why is because as we laid out in our motion, based on the laws, we see it, we need to get back to the district court and start the process again. This case has had a long history and I think that it's really time to get moving to the next steps. And I will absolutely reach out to Mr. Williams and we can talk about setting a mediation date. And I'd also like to get a mediator who's specifically familiar with how health claims are being processed. And the Ninth Circuit mediators may have had some experience, but we really need someone with that specific knowledge in this case. No, I appreciate that. And again, I don't want to micromanage your case, just we have the resource in the Ninth Circuit, but you've made a good explanation. You've clearly thought this through, which I appreciate. Well, it strikes me that this might be a good time to pause the litigation in this case, while you pursue mediation, maybe with a paid mediator who has the requisite health insurance industry experience. If there are further proceedings in the Beverly Oaks case, that may tell us in three months or so, whether that case is going to be the final word in the Ninth Circuit on the legal issues. On that point, Your Honor, if I could interrupt opposing counsel. Last week, the Ninth Circuit issued its final determination. It denied the petition for rehearing in that case and denied the petition for an en banc hearing. So the Beverly Oaks case is now final in the Ninth Circuit and the only remedy remaining for the insurance company in that case would be a mandate to the Supreme Court. And this may go to the Supreme Court because this issue of anti-assignment clauses and waiver of anti-assignment clauses and all of the issues that this court is looking at in this particular appeal, are they are being raised in cases all across the country. And there's a split in the circuit. But it's not an illicit policy, is it, Mr. Williams? I'm sorry? ERISA doesn't apply to this policy, does it? I thought I had read somewhere that it did not. ERISA does not apply to this policy and ERISA is not the applicable law that Your Honors are considering. If it's a pure question of California insurance law, it's not likely that the Supreme Court would pass on this case. I agree with that. Yeah, definitely so. Anyway, I want to make sure Mr. Kleiner though has, thank you for the input, Mr. Williams, but I want to make sure Mr. Kleiner, you've got more time. You don't have to use it if you want to, but if there are any other points you want to make, we don't want to cut you off. I appreciate that. And I appreciate Mr. Williams interjecting on the point on Beverly Hills. I was not aware that the ruling on the petition for en banc rehearing had been denied already. So thank you for that. Judge Tallman, as to your point, I think you were asking whether or not if we should basically stay this appeal pending further decisions. And again, my gut reaction, and I always talk to Mr. Williams about it after the hearing, but my gut reaction is that we've been waiting around for a long time. And I think it just makes sense to allow us to get in because we do have discovery to do and there will be mediation and settlement efforts. I just don't know. I mean, I'm not opposed to it necessarily. And so I need to talk to my client on that. And so I don't know if it's possible for us to come back and say, you know, talk to you or submit a letter saying we would like to be sent to mediation and maybe give us two weeks to do that. And I can talk to my client and see if they would be willing to do it. And then if not, then you move forward. I'm either, you know, granting our motion or addressing an opinion or however you see fit. But that's something I could address with my client. What we would normally do, Mr. Kleiner, as you probably know from prior mediation, would be to enter an order vacating submission of this case following decision and referring the matter to mediation. It doesn't necessarily have to be the Ninth Circuit mediators, but that would put the appeal on hold while you guys pursued those mediation efforts. And then you could tell us either we've settled the case or mediation was not successful. At that point, we would give you a decision and vacate our submission order. Yeah, I think that's a good suggestion, absolutely. And like I said, if that's something that I could round table with my client, one concern is the timing. So as I kind of laid out a little bit, the issues that we have addressed by this motion to dismiss are Aetna's primary contractual defenses. We haven't got into the logistics of the claims and I can't remember how many claims are at issue, but it requires that we go back claim by claim to determine was it properly denied or properly paid. And that takes some time. So if the court would be accommodating in terms of giving us time to do that analysis and then allowing us to go to mediation, then it would be productive. If not, then my concern would be we'd be too rushed to do a full analysis of that and get to mediation. And we would be kind of saying, well, we're not ready yet. One thing I've done in the past is the panel has issued an order saying in 14 days, the parties shall indicate whether they are amenable to mediation. And that would give you guys the two weeks that we require you to then submit a letter to the court saying, yes or no. And if the answer is yes, then we issue a second order saying you go to mediation. If the answer is no, then we'll decide the case. Is that something that sounds like that's kind of what would be a good path for you? To give you two weeks to talk to your client. That makes sense to me, Your Honor, yes. Do you want to add anything else? No, Your Honor, unless you have any further questions, I think the briefs, you've fully addressed all the issues. And so if there's anything else, I'm happy to answer it. Great, thank you, Mr. Kleiner. All right, Mr. Williams, why don't we just start there with the proposal? We went way over, but we'll just, yeah, two minutes is good. Start there with proposal where we issue an order saying the parties have 14 days to confer and indicate whether mediation is not, would be a good idea. And if the answer is yes, then you let us know we send you to mediation. If the answer is no, then we rule. We have no objection to that sort of an order. I think that makes sense. And Mr. Kleiner and I could, I'm sure, respond within the 14 days. I would like to address just one other substantive law point. We've talked about waiver and estoppel, and we've talked about California law and how it applies with respect to insurance code section 520. There's a second point of California law that we believe is relevant that has not been addressed, which is the application of the payment of benefits clause, which is a different legal point entirely from the application of California law generally to assignment of benefits. And we believe that the ambiguity issue that we've raised, and it's all fully briefed, so I'm not gonna go into the substance, but we believe the ambiguity issue and the application of California insurance principles to the payment of benefits clause as it should be properly interpreted in the context of the overall policy and in the context of what we see as a conflict of interest with the anti-assignment clause voids the anti-assignment clause on a different ground, that fundamentally it can't be enforced because it is inconsistent with another provision in the policy, but it requires Aetna to give notification to the plaintiffs prior to asserting any sort of anti-assignment argument. But counsel, can't that easily be reconciled in the difference between claims by out-of-network providers versus in-network providers? Respectfully not, Your Honor. That was the argument that was made in the district court by the district court, but we see no distinction at all on that ground that goes to the issue here because only out-of-network providers are subject to this anti-assignment clause defense. An in-network provider doesn't need an assignment. They simply do the work. So it simply, it disposes of it by leaving it in the hands of out-of-network providers only. And we want it to be heard. Because the insurer has engaged in discussions with them in order to admit them to the network and agreed on capitated rates and that sort of thing. Whereas with an out-of-network provider, there is no such pre-discussion. Instead, you're dealing with an insured who's covered under your policy, seeking services from a provider who is not within the network. It seems to me logical that the insurer would treat those two providers differently. Well, the insurer will treat the two providers differently, but it is only the out-of-network provider that has standing based solely on assignments. The, so the out-of-network provider is the one that asserts claims based on assignments. And the legal argument that we're making in the brief is that the payment of benefits clause in the policy itself precludes the insurer from relying on the anti-assignment clause as a basis to deny claims. And therefore, they should be, the claim should be allowed to go forward. And an in-network provider never even, that issue never even comes up. Any further questions? Okay, great. Well, thank you both, counsel, for your professionalism. We appreciate it. This is a peculiar case. It was a peculiar request you guys made to us, I will say. But I think now we have a better understanding as to where you guys were coming from on this. So thank you both. And we'll see what we end up doing in this case. This matter is submitted, and this particular panel is adjourned. Thank you, your honors. Thank you, your honor. Thank you.
judges: Tallman, Owens, Christensen